UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. 3:16-CR-102 |
| v. | ) | JUDGE TRAUGER |
| | ) | |
| MICHAEL POTEETE | ) | |

DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Michael Poteete, age 40, has served 16 months of a 48-month sentence for selling a firearm in 2015, which was his only significant offense since age 17. Poteete has liver damage, a history of heart problems, and a current problem with his splenic artery. He is confined at Lexington FMC, which is the federal prison with the fourth highest number of known Covid-19 cases. On about April 3, 2020, he and his wife each submitted requests for his release to the prison due to the Covid-19 crisis.

Poteete respectfully moves this Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), which allows such a reduction based on "extraordinary and compelling reasons." Since he is at high risk of severe harm from Covid-19, he asks that this Court to reduce his sentence by ordering his immediate release, followed by a period in home confinement.

I.   Statutory framework for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i)

The compassionate release statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

1

(1) in any case--

(A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--**

(i) **extraordinary and compelling reasons warrant such a reduction**; . . .

*****

**and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission**.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The commentary to the Sentencing Commission policy statement identifies some reasons that typically amount to "extraordinary and compelling reasons for a sentence reduction," including:

(A) Medical Condition of the Defendant.—
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). . . .
    (ii) The defendant is—
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, comment. n.1(A). In addition, the commentary advises that "Other Reasons" can also suffice in Note 1(D).

Thus, the statutory requirements for sentence reduction are that the court: (1) find extraordinary and compelling reasons for the reduction; (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a); and (3) ensure any reduction is consistent with applicable policy statements. 18 U.S.C. § 3582(c)(1)(A).

## II. Statement of facts

### A. Background and underlying offense

Michael Poteete was born in Nashville in 1979, and subsequently raised mainly by his mother. (Presentence Report (PSR) at 10.) He started drinking alcohol at age 12, and then he attended Glencliff High School until age 17, when he was still at the ninth-grade level although he had no learning disability. (*Id.* at 12.) As a teenager, he abused alcohol. (*Id.*)

At age 17, Poteete was arrested and charged with three armed robberies of businesses. (*Id.* at 8.) He was tried as an adult and sentenced to 12 years. (*Id.*) In 2003, he was paroled at age 24, and he successfully completed his parole in 2007. (*Id.*)

Since his release from state prison, Poteete has mainly lived responsibly. He has taken courses in college while consistently holding a job, and he married and started raising three children. (PSR at 12-13.) Nonetheless, he kept drinking heavily while married to his first wife, incurring two convictions for driving under the influence. (*Id.* at 8-9, 12.) Their marriage ended in 2017 (*id.* at 11), and his first wife has now lost custody of their children due to her neglect of them.

In July 2015, Poteete sold a semiautomatic handgun to a confidential informant for $600. (PSR at 4.) About a year later he was indicted in federal court for that crime, and then he was ultimately arrested in January 2017. (*Id.*) He was released on his own recognizance. (*Id.*)

At that juncture, Poteete took the crucial step of stopping his abuse of alcohol. (*Id.* at 12.) In February 2017, he and his first wife divorced, and in March he married Angela Poteete, whom he had recently met and who has been a positive force in his life. (*Id.*) Ms. Poteete has three children of her own, and she works part-time as the office manager of the Holy Trinity Community Church and part-time as a teacher's assistant. (*Id.* at 11; Ex. 1, Poteete Interview Notes.)

On pretrial release, Poteete fully complied with the Court's terms, and he ultimately pled guilty and was sentenced in October 2018, to 48 months in prison. (PSR at 4; Judgment, R.46, PageID# 126.)[1] In January 2019, he self-reported to serve his sentence at Lexington FMC. (Designation Letter, R.48, PageID# 148.)

As mentioned, Poteete's ex-wife has lost custody of their three children due to her neglect of them.[2] Poteete's aunt is raising the children, although Poteete himself intends to do so whenever he finished his sentence. Poteete's uncle (who is helping raise the children) has submitted a character letter in his support. (Ex. 2, Ryan Letter.)

---

[1] A sentence of 48 months fell within his sentencing guidelines range absent the enhancement under the Armed Career Criminal Act, which applied only due to his single spree of robberies at age 17.

[2] Counsel will separately file, under seal, the court order regarding the children's custody.

B.  Medical condition

Poteete has liver damage from drinking alcohol to excess for many years. (Ex. 1, Poteete Interview Notes.)  Bureau of Prisons medical records state that Poteete has "alcoholic liver disease."[3]

The BOP has also identified a problem with Poteete's splenic artery.[4]  It appears this type of condition can affect the immune system, and can lead to a rupture in the spleen.  (Ex. 3, *Vascular Diseases of the Spleen: A Review*.)

Poteete had treatment for chest pains at St. Thomas hospital in 2007 (records filed under seal), and he believes he has been diagnosed with atherosclerosis, a heart condition, while at Lexington FMC.  (Ex. 1, Poteete Interview; Ex. 4, Inmate Request to Staff.)

These conditions put Poteete at high risk for suffering severe consequences from Covid-19.  According to the Center for Disease Control (CDC), people who have underlying conditions like liver and heart disease are especially vulnerable to and at higher risk for serious complications from Covid-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html. (*See also* Ex. 5, Franco-Paredes Dec. at 2-3.)

Finally, it appears that the medical records that BOP provided to Poteete, and which counsel has filed, show treatments only through 2019.  Poteete and his wife are certain that he has had treatment in 2020, especially because his splenic

---

[3] The BOP records are being filed under seal.  Records mentioning liver disease are at page 36 and 89 of those records.
[4] Discussions of this issue are at page 1, 66, 75-76, 81, and 95 of the BOP records.

artery is something that requires periodic attention. Counsel respectfully asks that the Court require the government to provide a complete set of recent BOP medical records.

### C. Conditions in the prison where he is confined

Poteete is housed at Lexington FMC. As of yesterday, that prison has the fourth highest number of known Covid-19 cases amongst inmates in BOP prisons.[5] It reports 206 cases amongst it roughly 1,400 inmates. *Id.* The 206 figure reports only the known cases within the prison; it is likely the actual figure is much higher. *See Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020) (noting that at FCI Elkton, one of the hardest-hit facilities, "it is unlikely that [the BOP's] figures represent the actual number of cases at the institution, given the paltry number of tests the federal government has made available for the testing of Elkton's inmates"); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020) ("Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases.") (emphasis in original).

It is also likely that the Covid-19 virus will spread extensively and quickly now that it is clearly present in the prison. *United States v. Rodriguez,* 2020 U.S. Dist. LEXIS 58718, *23 (E.D. Pa. Apr. 1, 2020) (discussing BOP's inadequate response to Covid-19); (Ex. 6, Venters Dec. (epidemiologist who inspected BOP prison reports that the prison was seriously deviating from norms and that it was even destroying medical records).) For example, in the case of Fort Worth FMC, the

---

[5] https://www.bop.gov/coronavirus/.

virus inundated the prison in less than a month. As of April 14, Fort Worth FMC had just one known case; by April 26, it had 262 known cases; by May 13 it had 622 cases.[6] In one month, the rate of infection went from 1:1,500 to more than 1:3. Lexington FMC may be on the same trajectory as Forth Worth FMC, putting Poteete at great risk.

### D. Efforts to gain relief from the Bureau of Prisons

On April 3, Poteete requested home confinement from his Warden, evidently citing the CARES Act, but possibly not identifying the relief sought as compassionate release. (Ex. 1, Poteete Interview.) Poteete does not have a copy of this request.

On that same date, his wife Angela mailed a certified letter to the Warden of Lexington FMC on his behalf, expressly requesting compassionate relief. (Ex. 7, A. Poteete Letter; Ex. 8, Certified Mail Stamp.) Undersigned counsel spoke with Angela Poteete on May 13, 2020, and she stated that neither she nor her husband have received any response from the Warden to that request.

On April 30, Poteete himself submitted another request to his Warden, expressly asking for compassionate release due to his medical condition and Covid-19. (Ex. 4, Administrate Request.)

---

[6] In *United States v. Charles Edwards,* No. 3:13-cr-12 (M.D. Tenn.), the defendant Edwards filed for Covid-19-based compassionate release on April 14, 2020, and at that time his prison of 1,500 inmates (FMC Fort Worth) had just one inmate who had tested positive for the virus. (No. 3:13-cr-12, Motion, R.475, PageID# 2110 (citing BOP website).) By April 26, his prison had 232 inmates who tested positive for the virus. (No. 3:13-cr-12, Notice, R.479, PageID# 2175 (citing BOP website).) On May 13, there were 622 cases according to the BOP website.

### E. Release plan

If Poteete were released, he would live with his wife and her three children. (Ex. 1, Poteete Interview.) She has two jobs and she has health care that she can add him to. (*Id.*) Poteete has a job offer from Bass Tire Brake & Alignment. (Ex. 9, Bass Tire Letter.)

## III. Argument

### A. The 30-day waiting period is satisfied or should be waived.

The statute says a district court can grant a defendant's compassionate-release motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Poteete himself and his wife each submitted requests for his release on April 3, 2020, which is more than 30 days ago, and the BOP has not endorsed his filing of a compassionate-release motion. (*See* Section II.D, *supra*.) Thus, the 30-day waiting period is satisfied.

Even if it were not, this Court could waive that requirement. As courts in this precise situation have recognized, an exception to an exhaustion requirement must exist "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews v. Eldridge,* 424 U.S. 319, 330 (1976). Consequently courts have

recognized there must be three possible exceptions to the compassionate-release exhaustion requirement. *United States v. Zuckerman,* 2020 U.S. Dist. LEXIS 59588, *6 (S.D.N.Y. Apr. 3, 2020); *United States v. Perez,* 2020 U.S. Dist. LEXIS 57265 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, 2020 U.S. Dist. LEXIS 57962, *2 (D. Conn. Apr. 2, 2020). As explained by the *Zuckerman* court:

> First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue. Second, exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief. Third, exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice.

*Zuckerman,* 2020 U.S. Dist. LEXIS 59588 at *7 (internal quotation marks and citations removed). *See also United States v. Scparta*, 2020 U.S. Dist. LEXIS 68935, *2, 14-25 (S.D.N.Y. Apr. 20, 2020) (waiving 30-day waiting period and ordering immediate release for defendant slated by BOP for release after a 14-day quarantine because the BOP's "Kafkaesque" quarantine system left him at substantial risk of suffering irreparable injury).

In this extremely unusual time of pandemic, these exceptions—either individually or collectively—apply for a simple reason: When a defendant who is especially vulnerable to the virus is being held in a BOP facility where the virus is already present, that defendant lacks the ability to protect him or herself from irreparable harm—possibly death—that could easily occur before the 30-day exhaustion period even expires. *Zuckerman,* 2020 U.S. Dist. LEXIS 59588 at *11; *see United States v. McCarthy*, 2020 U.S. Dist. LEXIS 61759, *9 (D. Conn. Apr. 8,

9

2020) (finding exception to exhaustion and explaining "[e]ven a few weeks' delay carries the risk of catastrophic health consequences for McCarthy").

This holds true for Poteete. As explained in Section II.B, *supra,* Poteete suffers from medical conditions that put him at high risk for severe damage from Covid-19. And, as explained in Section II.C, *supra*, there is a strong chance he will contract Covid-19 in the coming days or week if he remains confined in his prison. Accordingly, the Court should waive the 30-day waiting period if it has not, in fact, been satisfied already.

> B. **Poteete suffers from a serious physical or medical condition that amounts to an extraordinary and compelling reason to reduce his sentence.**

A district court can reduce a final sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Under the old policy statement, "extraordinary and compelling reasons" to reduce a sentence include a defendant who is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). Mr. Jones's condition meets this standard because his longstanding hypertension, high cholesterol, and history of heart surgery, render him unable to care for himself or protect himself from Covid-19 while in the custody of the BOP.

The government acknowledges that an individual's health conditions, combined with the threat posed by the Covid-19 pandemic, can constitute extraordinary or compelling reasons under § 1B1.13 cmt. n.1(A)(ii). *See e.g., United States v. Charles Edwards,* No. 3:13-cr-12 (M.D. Tenn.), Gov't Response, R.493, PageID# 2767 (expressly confirming the government agrees that "[a] chronic condition such as diabetes may satisfy the "extraordinary and compelling" standard under Application Note 1(A)(ii)(I) of U.S.S.G. § 1B1.13, when coupled with a COVID-19 outbreak at a federal BOP facility"); *United States v. Charles Irby,* M.D. Tenn. No. 3:17-cr-70, R. 31, PageID# 159 ("If an inmate shows that he has a serious, chronic condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition could potentially satisfy the standard of 'extraordinary and compelling reasons.' Under these circumstances, considering the totality of the circumstances, a chronic condition (*i.e.,* one 'from which [the defendant] is not expected to recover') could reasonably be found to be 'serious' and to 'substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility,' even if that condition would not have constituted an 'extraordinary and compelling reason' absent the risk of COVID-19."))

Even before the Covid-19 pandemic, Poteete was "suffering from [] serious physical or medical condition[s]" from which he will not recover, and those conditions "substantially diminish[]" his ability to provide self-care in his prison.

U.S.S.G. § 1B1.13, appl. n. 1(A)(ii). Poteete still suffers from these serious medical conditions, as discussed in Section II.B, *supra*.

Further, Poteete cannot provide self-care and protect himself from Covid-19 while in custody. He is housed at Lexington FMC, which, as explained in Section II.C, *supra*, is a facility that could soon be inundated with Covid-19. That is especially true in light of his description of the conditions there, making social distancing impossible and the spread of the virus likely. (Ex. 1, Poteete Interview Notes.) As the Court is aware, social distancing is difficult if not impossible in a prison setting,[7] and this is especially true in a low-security facility such as Lexington FMC.

With his serious medical conditions and the threat of Covid-19, Poteete cannot care for himself safely in his prison environment. Courts have found that the risk of Covid-19, combined with an individual's high-risk health factors, satisfy the language of Application Note 1(A). *See, e.g., United States v. Compagna*, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune

---

[7] "Correctional and detention facilities can include custody, housing, education, recreation, healthcare, food service, and workplace components in a single physical setting. The integration of these components presents unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff and visitors." Center for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf; *see also A prison doctor's stark warning on coronavirus, jails and prisons*, L.A. Times (Mar. 20, 2020), *available at* https://www.latimes.com/california/story/2020-03-20/prison-doctors-stark-warning-on-coronavirus-and-incarceration ("Prisons are petri dishes for contagious respiratory illnesses.").

system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [] Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC") (citing U.S.S.G. § 1B1.13, Application Note 1(A)); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *5 (E.D. Mich. May 7, 2020) ("many courts have found that, for high risk individuals, communal prison confinement conditions satisfy the definition of 'extraordinary and compelling reason for release' because they make it impossible for vulnerable individuals to 'protect [them]selves from the spread of a dangerous and highly contagious virus'"); *United States v. Muniz,* 2020 U.S. Dist. LEXIS 59255, *3-4 (S.D. Tex. Mar. 30, 2020).

This court should immediately reduce Poteete's sentence on the grounds that he is suffering from a serious medical condition that has substantially diminished his ability to provide self-care against the risk of Covid-19 within his prison environment.

> C. **Poteete's high risk of serious health consequences due to Covid-19 amounts to an extraordinary and compelling reason other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A). This further necessitates reduction of his sentence.**

Poteete's risk of complications or death from Covid-19, coupled with the extraordinary nature of the pandemic, also give this Court authority to grant his motion pursuant to Note 1(D). In addition to the reasons listed in the policy statement as listed above, the commentary in Note 1(D) advises that "Other Reasons" can also suffice. Although Note 1(D) is written such that the BOP would

13

Case 3:16-cr-00102   Document 50   Filed 05/14/20   Page 13 of 17 PageID #: 163

have to pre-approve any such "other reason," such BOP approval is now inconsistent with the text of § 3582(c)(1)(A) as modified by First Step Act because the Act expressly took from the BOP any gatekeeping role. Thus, in the wake of the First Step Act, a district court now has the authority to determine for itself, without BOP approval, what amounts to any other "extraordinary and compelling reason" under the statute. *See, e.g., United States v. Young*, 2020 U.S. Dist. LEXIS 37395, *16-17 (M.D. Tenn. Mar. 4, 2020) (so holding);[8] *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019); *United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019); *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).

Exercising this new authority, several courts have held that the especially high risk of Covid-19 complications to a prisoner can constitute "other reasons providing an extraordinary and compelling reason for compassionate release. *See, e.g., United States v. Gonzalez*, 2020 U.S. Dist. LEXIS 56422, *9-10 (E.D. Wash.

---

[8] This order was modified on April 13, 2020, by removing one phrase that indicated the government conceded this point.

Mar. 31, 2020); *United States v. Rodriguez,* 2020 U.S. Dist. LEXIS 58718, *5 (E.D. Pa. Apr. 1, 2020); *United States v. McCarthy*, 2020 U.S. Dist. LEXIS 61759, *13-14 (D. Conn. Apr. 8, 2020). The courts so finding have emphasized that Covid-19 is bound to spread through BOP facilities, that inmates are powerless to adequately protect themselves from Covid-19, and that a high-risk inmate could suffer "profound" health consequences while, depending on the circumstances, the value of extracting the full custodial punishment from the inmate may be "marginal." *Rodriguez,* 2020 U.S. Dist. LEXIS 58718 at *26; *see United States v. Perez,* 2020 WL 1546422, *2 (S.D.N.Y. Apr. 1, 2020) (following similar reasoning).

Courts have so held even in cases where the defendant has as substantial amount of time left to serve on the sentence, *see, e.g., United States v. Hansen*, 2020 U.S. Dist. LEXIS 61946 (E.D.N.Y. April 8, 2020) (granting release 11 years into a 20-year sentence); *United States v. Bess*, Case No. 1:16-cr-156, 2020 U.S. Dist. LEXIS 71056 (W.D.N.Y. Apr. 22, 2020) (granting release 41 months into an 84-month sentence), or when victims of a crime oppose release, *see, e.g., United States v. Park*, No. 16-CR-473 (RA), 2020 WL 1970603, at *6 (S.D.N.Y. Apr. 24, 2020) ("in light of the gravity of her conduct, Ms. Park deserves to spend every day of the sentence that she received in prison. But as other judges across this country have rightly noted, 'we are not currently living under normal circumstances.'").

Poteete's risk of suffering serious and irreparable consequences to his health are especially high because of his medical condition described in Section II.B, *supra.* Poteete's medical vulnerability exposes him to an unacceptably high risk of

contracting COVID-19 and becoming seriously ill or dying. This Court should conclude that the fact that Poteete faces this risk constitutes an extraordinary and compelling reason for compassionate release.

D. Under § 3553(a), the Court should release Poteete and possibly require him to serve a period in home confinement.

Where, as here, extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).

Poteete has served 16 months of a 48-month sentence that was imposed for a nonviolent firearms offense from 2015. While on pretrial release, Poteete complied with all terms of his supervision and committed no violations. In fact, it appears that Poteete took great strides in rehabilitation even before arrested on this charge in 2017, and that he has abided by the law and lived very responsibly since that arrest.

If released, Poteete can reside with his wife in Ashland City, where she works two jobs and raises three children. (*See* Section II.E, *supra*.) As mentioned, he can also regain custody of his three children, and he has a verified job offer already. Counsel is providing information regarding the proposed release plan to the U.S. Probation Office.

In sum, Poteete respectfully requests that the Court reduce his sentence to time served, possibly to be followed by a period of home detention. *United States v. Perez,* 2020 WL 1546422, *2 (S.D.N.Y. Apr. 1, 2020) ("The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential

consequences of doing so are extraordinarily grave."); *Rodriguez,* 2020 U.S. Dist. LEXIS 58718 at *26 (following similar logic). Such a sentence would reflect the seriousness of his offense, would adequately serve the need for deterrence, and it would likewise serve the purposes of further promoting his rehabilitation.

## IV. Conclusion

Michael Poteete respectfully asks that the Court, acting pursuant to either Note 1(A) or 1(D) of U.S.S.G. § 1B1.13, reduce his custodial sentence to time served and to possibly order him to serve a period of his supervision in home confinement. He also asks that the Court order the government to respond to this motion in an expedited manner and that the government ensure that all recent BOP medical records are produced.

Respectfully submitted,

s/ *Michael C. Holley*
MICHAEL C. HOLLEY
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2020, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to Joseph Montminy, Assistant United States Attorney, Office of the U.S. Attorney, 110 Ninth Avenue North, Suite A961, Nashville, Tennessee, 37203.

s/ *Michael C. Holley*
MICHAEL C. HOLLEY